**WILLIAM T. HARVEY, Plaintiff**
**v.**
**HAROLD WEBB, Defendant**
**and**
**ALBERT WILCOX, Third Party Defendant**
Civil No. 196-1962
Municipal Court of St. Thomas and St. John
July 15, 1963

JOHN W. NEWMAN, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for plaintiff*

DUDLEY & HOFFMAN, Charlotte Amalie, St. Thomas, Virgin Islands, (GEORGE H. T. DUDLEY, ESQ., of counsel), *for defendant*

JAMES A. BOUGH, ESQ., Charlotte Amalie, St. Thomas, Virgin Islands, *for third party defendant*

MICHAEL, *Municipal Judge*

This is an action in which the plaintiff sued defendants Harold Webb and Geneva Phelan d/b/a Villa Olga Hotel for wages for the period April 16, to September 4, 1960.

The court does not think it necessary to discuss the various pleadings and motions that were filed and ruled upon before the case was heard on its merits, except to state that Geneva Phelan was dropped as a defendant and Albert Wilcox brought in as a third party defendant.

After hearing, memoranda of law were filed, which the court has read and considered, together with the exhibits admitted in evidence.

From the evidence, the court makes the following findings of fact:

The defendants, Webb and Wilcox, entered into a partnership agreement on March 13, 1959 (Ex. C), whereby they were to operate the business known as the MAD HATTERS OF VILLA OLGA.

Immediately prior to the purchase of the one-half interest by the defendant, Webb, from Wilcox, making them partners, the business was operated by defendant Wilcox, and prior thereto, by Wilcox and others as partners.

Among other things, the agreement provided that Wilcox and his wife were to take over the complete management of the business, and that the liabilities of Webb were not to exced $2,500.

On June 15, 1960, the parties entered into a written Dissolution Agreement (Ex. D), in which it was agreed, among other things, "that on and after the — day of June 1960, the co-partnership shall determine and cease to exist"; that neither party was to incur any further liabilities or expenses in the name of the partnership without the consent of the other partner; that the parties were to immediately close all Villa Olga Bar and Restaurant facilities and keep them closed until the termination and dissolution of said partnership had been completed and were reopened by the continuing partner; and that the staff of the Villa Olga was to be immediately reduced to one maid and one gardener-maintenance man.

Pursuant to said agreement, defendant Webb emerged as the continuing partner, and took over the administration of the Villa Olga in September, 1960.

The plaintiff, William Harvey (also known as Leslie Heath), a former employee of defendant Wilcox, and thereafter, an employee of the partnership as gardener-maintenance man, whose pay was $25.00 per week, did not receive wages from April 16 to September 4, 1960, except $50.00 during the month of August 1960, although

he rendered services as gardener-maintenance man during the said period.

Although the Dissolution Agreement was not entered into until June 15, 1960, the plaintiff's name ceased to appear on the payroll of the partnership (Ex. A) after April 16, 1960, the reason being, there were no funds in the partnership with which to pay him.

By stipulation of the parties, a report was submitted to the court, after the trial, by the accountant of the parties defendant. This report shows an accrual of wages due the plaintiff on August 31, 1960, in an amount of $550.00, and to Rosalie Farrington (the maid) an amount of $60.00.

On January 25, 1963, the defendants executed a mutual release (Def. Wilcox Ex. 1), one to the other, from all claims arising out of the partnership and agreed to discontinue an action which Wilcox had filed in the District Court against Webb.

In denying liability to the plaintiff, defendant Webb contends that he did not engage plaintiff to work in any capacity during the period April 16, 1960 to September 4, 1960, but that plaintiff was employed by one Wilcox, a former partner, and that the partnership was a limited partnership, of which he, Webb, was a silent partner.

Defendant Wilcox contends that both himself and Webb are liable to plaintiff, but that the release of Wilcox by Webb in the Release Agreement has the effect of requiring Webb to save Wilcox harmless from any payment Wilcox may be required by the judgment of the court.

With the evidence and contentions of the parties as above stated, the following seem to be the basic questions involved:

1. Was a limited partnership legally formed by the agreement of March 13, 1959, which would relieve defendant Webb of plaintiff's claim against the partnership?
2. Did the plaintiff have notice, actual or constructive, of such a partnership?

3. Did the Dissolution Agreement ipso facto relieve the partnership of all liabilities?
4. Did the Mutual Release between the defendants have any bearing on the plaintiff's claim, if any he has, against the partnership?

■ As to question No. 1, there is no doubt in the court's mind but that the parties intended to form a limited partnership, and as a preliminary, entered into a "temporary" agreement. This agreement, however, while serving as a partnership agreement between the parties, did not achieve the status of a limited partnership under the requirements of 26 V.I.C. § 202(a), 40 Am. Jur. sec. 506, pg. 475, Bisnov v. Hyde, 290 Fed. (2) 560.

This agreement, addressed "TO WHOM IT MAY CONCERN", was not a certificate signed and sworn to by the parties (it was signed by one), was not recorded, nor was it brought to the attention of the plaintiff. The parties themselves call it a "letter which will serve as a temporary agreement." Taken as a whole, this was not substantial compliance contemplated by 26 V.I.C. § 202(b).

The court, therefore, concludes as a matter of law that a limited partnership was not formed.

■ With respect to question No. 2, the evidence shows that plaintiff was working for Wilcox before the partnership was formed. It also shows he was working for the partnership after it was formed (Ex. A). In addition, the evidence shows that Webb himself told not only plaintiff that he was a partner, but so held out himself to others with whom he dealt. It is conceded by defendant Webb that after the partnership was entered into, the plaintiff was an employee of the partnership. The evidence does not show that at any time plaintiff's status as an employee of the partnership ceased prior to the taking over of the facilities in September 1960 by Webb.

Moreover, in his dealing with plaintiff and other parties, the defendant Webb, while not concealing his relationship

375

as a partner, never actually gave notice to them as to his alleged status as a *limited* partner. Without such notice, and the defendants having failed to record, plaintiff was without notice, actual or constructive, that theirs was a limited partnership.

Defendant Webb relies on his agreement with Wilcox as to his non-liability in excess of $2,500, and the fact that the defendant, Wilcox, was to take over the complete management of the business. He argues strongly that "plaintiff had notice of the precise relationship of defendant Webb to the business known as MAD HATTERS OF VILLA OLGA," but nowhere in the evidence was this shown. The fact that defendant Wilcox was manager of the business in and of itself was not notice of the nature of the partnership, as whether general or limited, partners may agree among themselves for the management of the business by certain of the partners. 68 C.J.S. sec. 16, pg. 426, Hardymon v. Glenn, 56 Fed. Supp. 269. Therefore, the agreement of the partners that defendant Wilcox and his wife were to manage the business was not controlling, so that the mere management of the business by them was constructive notice of the alleged limited partnership status.

In passing, it should be stated that the evidence shows that Webb contributed to the obligations of the partnership in an amount exceeding the $2,500 limitation.

It should be also noted that whatever claims the defendants might have between themselves as to liability of one beyond a certain amount does not bind third parties who have no actual or constructive notice. The intended limitation of the liability of the special or limited partner will be ineffective as to creditors who have not dealt with the business as a limited partnership. Bisnov v. Hyde. Id.

■ As to question No. 3, a reading of the Dissolution Agreement, apart from the fact that it does not bind

creditors who were not parties thereto (see 26 V.I.C. § 128(b), 40 Am. Jur. sec. 258, pg. 307), on its face shows. that the defendants themselves provided for the services of the plaintiff and a maid. Paragraphs Nos. 1 and 2 of Ex. D, page 2, provide as follows:

"1. The parties shall immediately close all Villa Olga Bar and restaurant facilities and keep them closed until the termination and dissolution of said partnership has been completed and they are reopened by the continuing partner.

"2. The staff of the Villa Olga shall be immediately reduced to one maid and one gardener-maintenance man and no compensation shall be paid to any other personnel or staff. No meals are to be furnished to any member of the Villa Olga staff or personnel during the termination and dissolution of the partnership."

Although the Court has already found that the plaintiff worked as such gardener-maintenance man for the partnership until the dissolution of the partnership had been completed and taken over by the defendant, Webb, the continuing partner, it is also evident by the above provisions, defendants intended that while neither party was to incur any further liabilities in the name of the partnership (Ex. D, pg. 1, par. 5), the liability for the payment of wages to a maid and gardener-maintenance man by the partnership during the termination and dissolution until transfer to the continuing partner was contemplated and was agreed upon.

■ ■ With respect to question No. 4, the Mutual Release had no effect on the rights of plaintiff, for the obligation was incurred during the existence of the partnership and, as provided for in the Dissolution Agreement, until the termination and dissolution of the partnership had been completed and the facilities reopened by the continuing partner.

The very provisions of the Dissolution Agreement indicate that at the time the agreement was entered into, it

was not known by the parties who would be the continuing partner (see Par. 7, pg. 4, Ex. D), and therefore the provision of reducing the staff to a maid and a gardener-maintenance man, which obviously was for the purpose of keeping the grounds and other places in order, was for the benefit of both (the partnership) until taken over by one.

It cannot then be said, as argued by defendant Webb, that because Wilcox was the lessee of the premises, the services of the maid and maintenance man provided for in the Dissolution Agreement were solely for the benefit of Wilcox, or that these employees were *his*, during that period. If they were to be the employees of Wilcox, the provision would have or should have so stated.

The court does not agree with the position of defendant Wilcox to the effect that the Mutual Release has the effect of requiring Webb to save Wilcox harmless. It is clear that the effect of the release was to place the defendants in an equipollent position as to each other, and could not in any way release any of them from liabilities of the partnership incurred prior to the execution of the release.

From the above the court concludes as a matter of law that both parties are jointly liable for the services rendered by plaintiff to the partnership, and judgment will be entered in favor of the plaintiff and against the defendants in the amount sued for, minus $50.00, with costs and a counsel fee of $175.00.

This holding is not intended to in any way adjudicate whatever claims the defendants might have between themselves by reason of the partnership agreement.